## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS
## BENTON DIVISION

| | | |
|---|---|---|
| **GREGORY STEINSULTZ,** | ) | |
| **individually, and on behalf of all** | ) | |
| **others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.** **3:26-cv-00123** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **INIU INTERNATIONAL CORP.** | ) | |
| **and SHENZHEN TOPSTAR** | ) | |
| **INDUSTRY CO., LTD.** | ) | |
| | ) | |
| **Defendants.** | | |

## CLASS ACTION COMPLAINT

Plaintiff GREGORY STEINSULTZ ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against INIU INTERNATIONAL CORP. ("INIU") and SHENZHEN TOPSTAR INDUSTRY CO., LTD. ("Topstar") (collectively, "Defendants") to obtain damages, restitution, and/or injunctive relief for himself and on behalf of the proposed members of the Nationwide Class and Illinois Subclass as defined herein. Plaintiff alleges the following allegations based upon information and belief, except as to his own respective actions, the investigation of his counsel, and the facts that are a matter of public record.

**NATURE OF THE CASE**

1.      Plaintiff brings this class action complaint to remedy violations of applicable law in connection with Defendants' design, manufacture, distribution, marketing, and sale of power bank models BI-41/BI-B1, BI-B43, BI-B44, BI-B7, BI-B71, BI-B72, BI-B73, BI-B74, BI-B75, BI-B2, BI-B11, BI-B12, BI-B21, BI-B9, and BI-B91, all of which suffer from identical defects in design (collectively, the "Defective Products"). Specifically, the Defective Products are prone to spontaneous explosion that may result in serious and potentially life-threatening injuries as well as creating fire hazards and significant damage to any surrounding property.

2.      On December 5, 2025, Defendants, in conjunction with the United States Consumer Product Safety Commission ("CPSC"), announced a voluntary recall of approximately 210,000 power banks due to their prevalent defective nature of spontaneous explosion that may result in serious burns to users and others in the vicinity, as well as creating a fire hazard.

3.      While some power banks (*i.e.,* with serial numbers 000G21, 000H21, 000I21 and 000L21) were recalled (the "Recalled Products"), the same defect exists on other power banks that continue to remain on the market and/or in the possession of consumers like Plaintiff.

4.      The defects to the power banks permeate – unknowingly to consumers – throughout all Defective Products which can result in significant physical injury, economic harm, and property damage.

5.      Both Defendants fail to acknowledge the serious risks consumers are exposed to as a result of their Defective Products, instead placing the blame on a few "bad apples" to avoid liability and a decline in sales.

6.      Because each Defendant persists in reaping its spoils while continuing to provide a

false narrative that the Defective Products are safe, Defendants expose millions of users to this serious risk while knowingly selling products that are not only dangerous, but also worth much less than represented and marketed.

7.    Additionally, Defendants' failure to admit and warn of the heightened risks of injury, explosion, and fire hazard pertains to all Defective Products and is not limited to just the Recalled Products, which exposes, for example, thousands of airline passengers every day to undue risk because the US Federal Aviation Administration ("FAA") prohibits passengers from traveling with damaged or recalled batteries, including power banks.

8.    Plaintiff brings his class claims against both Defendants on behalf of himself and all other similarly-situated purchasers and/or users of power bank models BI-B43, BI-B44, BI-B7, BI-B71, BI-B72, BI-B73, BI-B74, BI-B75, BI-B2, BI-B11, BI-B12, BI-B21, BI-B9, BI-B91, and BI-B1/BI-41 with serial numbers other than 000G21, 000H21, 000I21 and 000L21 (the "Class Products"), alleging (i) Violation of Illinois' Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.*); (ii) Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*); (iii) Breach of Implied Warranty of Merchantability (810 ILCS 5/2-314 *et seq.*); (iv) Fraud by Omission/Concealment; (v) Fraud by Misrepresentation; (vi) Unjust Enrichment; (vii) Strict Liability – Failure to Warn; (viii) Strict Liability – Design Defect; (ix) Strict Liability – Manufacturing Defect; (x) Negligent Design Defect; and (xi) Negligent Failure to Warn.

## PARTIES

9.    Plaintiff Gregory Steinsultz is a natural citizen and a resident of Carterville, Illinois.

10.    Defendant INIU International Corp. is an international corporation organized and existing under the laws of Canada with its principal place of business located at 32 Kerrigan Crescent in Markham, Ontario.

11.    Defendant INIU is a "pioneering force in mobile power and accessories, setting new benchmarks for safety, performance, and innovation" in over 174 countries in which its products are sold.[1]

12.    Defendant INIU maintains its United States headquarters in Murrieta, California.[2]

13.    Defendant Shenzhen Topstar Industry Co., Ltd. is a corporation or analogous business entity organized and existing under the laws of the People's Republic of China, with its principal place of business located at Jiaxiye Plaza, No. 318, Minzhi Avenue, Minzhi Community, Minzhi Street, Longhua District, Shenzhen, China 518131.

14.    Defendant Topstar designs and manufactures the Class Products for export and sale throughout the world, including throughout the United States and in Illinois.

15.    Defendant Topstar is the parent of, wholly owns, controls, and manages INIU, including the marketing, advertising, warranting, sale, and distribution of the Class Products throughout the United States, including Illinois.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendants are citizens of different states.

17.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

18.    This Court has general and specific jurisdiction over Defendants because

---

[1] https://www.linkedin.com/company/iniu-official-store; https://iniushop.com/pages/about-us

[2] https://www.linkedin.com/company/iniu-official-store

Defendants have sufficient minimum contacts with Illinois, including the Southern District of Illinois, and have purposefully availed themselves of the laws, rights, and benefits of the state of Illinois. Defendants engaged in activities: (i) directly and/or through parent companies, affiliates and/or agents; (ii) conducted substantial business in this forum; and/or (iii) have engaged in other persistent courses of conduct and/or have derived substantial revenue from services provided in Illinois and in this judicial district.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Classes' claims occurred in this judicial district. Defendants market, sell, and distribute their products throughout the United States, including this judicial district.

## FACTUAL ALLEGATIONS

### A.  Background on Lithium-Ion Battery Technology and Safety Risks

20.     All lithium-ion batteries operate through the same fundamental mechanism: cells clustered within battery casings facilitate the movement of lithium ions between electrodes, generating electric currents utilized by certain consumer devices.

21.     The primary safety risk from lithium-ion batteries occurs during thermal runaway—a dangerous chain reaction where a battery cell generates heat faster than it can dissipate it, causing temperatures to rise uncontrollably.[3] This self-perpetuating cycle begins when initial heat generation triggers chemical reactions that produce additional heat, which accelerates further

---

[3] Yixin Dai and Aidin Panahi, *Thermal Runaway Process in Lithium-Ion Batteries: A Review*, SCIENCEDIRECT,
https://www.sciencedirect.com/science/article/pii/S2949821X24000917?__cf_chl_tk=Cw5ZWuSf4IH40
A8nmx.H3uegLx.aeBapW1cSGfhQ15E-1769785512-1.0.1.1-
Ue8i60_L3NX0LlaPZOv90DvyGo1PlXIcKVKef1wagQA (last visited Feb. 2, 2026).

reactions in a snowball effect that can result in fire or explosion.[4]

22.    Fire departments in major metropolitan areas have documented a dramatic surge in battery-related incidents. Between January 2022 and August 2025, New York City alone experienced at least 800 fires sparked by lithium-ion batteries, leading to 30 deaths and more than 400 injuries.[5]

23.    Aviation safety concerns have also intensified as more than 600 in-flight lithium battery incidents involving smoke, fire, or extreme heat have been recorded by the FAA within the past two decades, with 22 verified incidents occurring in 2025 alone.[6] These incidents have prompted airlines worldwide to implement strict limitations on battery size and usage during flights.

24.    For example, Southwest Airlines has adopted a "first-in industry" policy requiring passengers to keep portable chargers (*i.e.,* power banks) visible during use on flights, effective May 28, 2025.[7] The rule specifically states that "using portable charging devices while stored in a bag or overhead bin will no longer be permitted" and that portable chargers "must be out of any baggage and remain in plain sight" when used during flight.[8]

25.    Southwest's policy follows similar restrictions implemented by Asian carriers after a portable power bank with a lithium battery was identified as a possible source of a fire that

---

[4] *Id.*

[5] https://www.nfpa.org/news-blogs-and-articles/nfpa-journal/2025/08/08/lithium-ion-battery-fires-fdny

[6] *Lithium Battery Incidents*, FED. AVIATION ADMIN., https://www.faa.gov/hazmat/resources/lithium_batteries/incidents (last visited Feb. 2, 2026).

[7] Francesca Street, *Southwest Airlines Places New Restrictions on Portable Chargers in Carry-on*, CNN (May 22, 2025), https://www.cnn.com/2025/05/22/travel/southwest-airlines-tightens-rules-visible-portable-chargers (last visited Feb. 2, 2026).

[8] *Id.*

engulfed an Air Busan plane in January 2025.[9] South Korea subsequently introduced a nationwide restriction banning passengers from storing power banks in overhead cabins, while Thai Airways has prohibited power bank use entirely and Singapore Airlines has banned in-flight charging of these devices.[10]

26.    As lithium-ion batteries become increasingly integrated into everyday consumer products, the mounting safety incidents and regulatory responses reflect growing recognition and concern of the significant risks these devices pose to public safety, prompting enhanced safety measures and evolving industry standards.

**B.  The Class Products and Recalled Products**

27.    In April 2023, Defendants applied for and were granted FCC ID 2A2ND-BIB43, certifying Defendants' lithium-ion power bank models BI-B1/BI-41, BI-B43, BI-B44, BI-B7, BI-B71, BI-B71, BI-B72, BI-B73, BI-B74, BI-B75, BI-B2, BI-B11, BI-B12, BI-B21, BI-B9, and BI-B91 for sale in the United States.

28.    Each of these power bank models' "function, software, and electric circuit" are identical. The *only* differences between the models registered under FCC ID 2A2ND-BIB43 are cosmetic.

29.    In December 2024, Plaintiff purchased a model BI-B43 power bank from Defendants through Amazon.com for approximately $30.

30.    On October 18, 2025, while Plaintiff was storing the power bank in his vehicle, the

---

[9] *South Korea Says Battery Pack Is Possible Cause of Air Busan Fire*, REUTERS (Mar. 14, 2025), https://www.reuters.com/world/asia-pacific/south-korea-probe-finds-battery-pack-possible-source-air-busan-fire-2025-03-14/ (last visited Feb. 2, 2026).

[10] Hyunsu Yim, *South Korea to Limit Power Banks on Flights Following Plane Fire*, REUTERS (Feb. 13, 2025), https://www.reuters.com/world/asia-pacific/south-korea-limit-power-banks-flights-following-plane-fire-2025-02-13/ (last visited Feb. 2, 2026).

power bank spontaneously began to emit loud, exploding noises. Upon immediate investigation, Plaintiff discovered that the power bank had caught fire and was emitting flames and toxic smoke. Plaintiff immediately called emergency services. The local fire department promptly responded to the scene and worked to extinguish the blaze. Despite the firefighters' swift response and diligent efforts to contain the fire, the thermal event resulted in substantial property damage.

31.    On December 5, 2025, Defendants, together with the CPSC, recalled the Recalled Products.[11]

32.    The Recalled Products were sold on Amazon.com from approximately August 2021 through April 2022.[12]

33.    In the recall notice, Defendants warned individuals in possession of the Recalled Products that "[r]ecalled lithium-ion batteries require special handling and **must not** be disposed of in regular trash or recycling bins" and instructed users to "dispose of [all Recalled Products] in accordance with all applicable local, state, and federal regulations by taking them to a municipal Household Hazardous Waste (HHW) collection center that accepts recalled lithium-ion batteries."[13]

34.    The CPSC disclosed that Defendants received fifteen reports of the Recalled Products overheating, including eleven reports of fires and property damage totaling over

---

[11] *See* https://www.cpsc.gov/Recalls/2026/INIU-Recalls-Power-Banks-Due-to-Fire-and-Burn-Hazards-Sold-on-Amazon.

[12] *Id.*

[13] *See* ://iniushop.com/pages/recall-b41?utm_source=google&utm_medium=cpc&utm_campaign=US_Pmax_EN_0625_RETENTION&utm_content=&utm_term=&gad_source=1&gad_campaignid=22714118819&gbraid=0AAAAAo0GKNuf63uMvRM63SGOsv_FidTlq&gclid=CjwKCAiA4KfLBhB0EiwAUY7GAUbZfRy1gcUZq8XdW2GXssct74WYD1XLEbSgWQMwaPvDun2Do6xi-BoCQu0QAvD_BwE (emphasis in original).

$380,000.[14]

35.    However, Plaintiff's power bank, a model BI-B43, was *not* included in the December 5, 2025, recall.

36.    The model BI-B43 power bank, which Plaintiff purchased, has not been recalled.

37.    In addition to the BI-B43 power bank model, Defendants have also failed to recall power bank models BI-B44, BI-B7, BI-B71, BI-B71, BI-B72, BI-B73, BI-B74, BI-B75, BI-B2, BI-B11, BI-B12, BI-B21, BI-B9, and BI-B91, as well as all BI-B1/BI-B41 power banks with serial numbers other than 000G21, 000H21, 000I21 and 000L2 (*i.e.,* the "Class Products").

### C.  Defendants' Affirmative Misrepresentations Regarding the Class Products

38.    Through their marketing and sales, Defendants have consistently represented that the Class Products are safe and effective for their intended use as power banks.

39.    For example, Defendants purport to guarantee their customers "[u]ncompromising safety[] [and] [c]ertified [r]eliability" by "equipp[ing] [e]ach device [] with SmartProtect systems and multi-layered safety features to guard against overcharging, overheating, and short circuits, protecting both your devices and the charger itself."[15]

40.    Defendants claim that their "15-layer SmartProtect system and TempGuard 2.0 [] monitor temperature and keep your device — and you — safe."[16]

41.    If a consumer notices one of Defendants' products beginning to overheat, Defendants urge the consumer to "[r]est assured, [because] this is normal behavior."[17]

---

[14] *Id.*

[15] https://iniushop.com/collections/portable-charger

[16] https://iniushop.com/pages/iniu-3-industry-first-techs

[17] *Id.*

42.    According to Defendants, "[a] slight increase in temperature during charging—especially during wireless charging—is completely normal. . . Our power bank is equipped with built-in overcharge and overheat protection, ensuring safe use throughout the charging process."[18]

43.    Additionally, Defendants claim they "never compromise on safety,"[19] that "safety and product integrity are [their] highest priorities,"[20] and that they "always treasure" their core values of "honesty[] [and] reliable quality."[21]

44.    Furthermore, Defendants doubled down on their [mis]representations that the Class Products are safe and fit for their intended use in their December 5, 2025, recall notice.

45.    In the recall notice, Defendants assured consumers that "[a]ll other INIU power banks and models are completely unaffected and remain safe for regular use."[22]

46.    Defendants also instructed consumers to "[u]se [all non-recalled products] with confidence[.]"[23]

47.    Despite their decision to recall products which are internally identical to Plaintiff's power bank model and their awareness of incidents like Plaintiff's explosion and fire, Defendants continue to falsely and misleadingly advertise the Class Products as safe and fit for their intended use.

48.    At the time of purchase, Defendants did not inform Plaintiff and other similarly

---

[18] https://iniushop.com/pages/get-warm-while-charging-magsafe-pb (emphasis added)

[19] https://iniushop.com/pages/about-us

[20] https://iniushop.com/pages/recall-b41

[21] http://www.topstar-inc.com/company_profile.html

[22] *Id.*

[23] *Id.*

situated consumers of the Class Products' potential for injury and fire risks through the product labels, instructions, packaging, advertising, or in any other manner, in violation of state and federal laws.

49.    Plaintiff purchased a Class Product while lacking information and notice that the Class Product could burn and harm those who possess it, thus causing serious harm to those who possess a Class Product.

50.    Defendants have not notified Plaintiff and other similarly-situated consumers of the Class Products' injury and fire risks even after those risks became known to Defendants, causing Defendants' decision to remove the Recalled Products from the market only.

### D. Defendants' Misrepresentations and Omissions are Actionable

51.    Plaintiff bargained for and intended to buy a power bank that was safe for normal household use, but instead received a product with a defective lithium-ion battery that exposed him to an explosion and fire.

52.    The Class Products were, and still are, unsafe for consumer use due to the potential injury and fire risk hazards because of the defective lithium-ion batteries found in each of the Class Products.

53.    As a result of the injury and fire risk hazards, Plaintiff and all others similarly situated were deprived the basis of their bargain given that Defendants sold them a product containing dangerous defects.

54.    The dangerous explosion, burn, and fire risk hazards inherent to the Class Products render them unmerchantable and unfit for their normal intended use.

55.    The Class Products are not fit for their intended use because they expose consumers to potential injury and fire hazard risks.

56.    Plaintiff seeks to recover damages because the Class Products are defective,

worthless, and unfit for use and possession due to the potential injury and fire hazards that may result from their use.

57.     Defendants engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from their omissions pertaining to the risks of burn, explosion, and fire, affecting the Class Products.

58.     Indeed, no reasonable consumer, including Plaintiff, would have purchased a Class Product had they known of the omissions of material facts regarding the possibility of risk of burn, explosion, and fire hazard.

59.     If Plaintiff had been aware of the risk of burn, explosion, and fire hazard in the Class Product, he would not have purchased it or would have paid significantly less for it.

60.     Because Plaintiff and all other similarly-situated consumers purchased worthless and dangerous Class Products, which they purchased under the guise that the Class Products were safe and effective, they have suffered losses.

61.     Because Plaintiff and all other similarly-situated consumers have not been notified that they are or may be in possession of a worthless and dangerous product, which they purchased under the pretense that the Class Products were safe, they have suffered losses.

62.     As a result of each Defendant's actions (or inactions), Plaintiff and other similarly-situated consumers have incurred damages.

63.     As a result of the above losses, Plaintiff seeks damages and equitable remedies on behalf of himself and the putative Classes.

## CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this case as a class action pursuant to Federal Rules of Civil Procedure 23 on behalf of the following classes:

<u>Nationwide Consumer Protection Class</u>: All persons within the United States who, within the applicable limitations period, purchased one or more of the Class Products ("Nationwide Class").

<u>Illinois Subclass</u>: All persons within the state of Illinois who, within the applicable limitations period, purchased one or more of the Class Products ("State Subclass").

65.     Collectively, the Nationwide Class and the State Subclass are referred to herein as the "Class" or the "Classes."

66.     Excluded from the Classes are: (1) Defendants; (2) Defendants' officers and directors, those persons' immediate family members, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action and the members of their family; (4) persons who properly execute and file a timely request for exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defense counsel, including their experts and consultants.

67.     **Numerosity**. Each of the proposed Classes contain members so numerous that separate joinder of each member of the respective Class is impracticable. The total sales of the Class Products during the applicable statutory period are in the millions and there are thousands of proposed class members. The individuals who purchased the Class Products can be ascertained through records in the possession, custody, or control of Defendants.

68.     **Commonality and Predominance**. There are questions of fact or law common to the Classes, which common questions predominate over any questions affecting only individual members, including but not limited to, the following:

- Whether Defendants misled consumers into purchasing the Class Products;
- Whether Defendants misrepresented or concealed material facts about the Class Products, including the quality of the products and safety of using them;
- Whether Defendants' advertisement and marketing of the Class Products were deceptive, false, fraudulent, or misleading;

- Whether Plaintiff and other Class members have been harmed by each Defendant's conduct alleged herein;
- Whether Defendants acted with deliberate indifference to the safety risks posed by the Class Products;
- Whether Defendants were unjustly enriched by their deceptive practices;
- Whether Defendants breached their warranties owed to Plaintiff and the Class members;
- Whether Defendants are strictly liable for the conduct alleged herein;
- Whether Defendants violated the Illinois Uniform Deceptive Trade Practices Act when they sold the Class Products to consumers; and
- Whether Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act when they sold the Class Products to consumers.

69. **Typicality**. Plaintiff's claims are typical of the Classes' claims insofar as they are identical and Plaintiff has no circumstances antagonist to the Classes.

70. **Superiority**. A class action is the superior mechanism for the fair and efficient adjudication of this controversy.

71. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff understands the obligations inherent in representing a putative class and the corresponding duties. Plaintiff has retained counsel competent and experienced in complex, class action litigation. Plaintiff has no interests antagonistic to the Classes' interests, and Defendants have no defenses unique to Plaintiff.

## CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS 510/1 *et seq.*)

72. Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

73. Defendants, Plaintiff, and the State Subclass are "persons" within the meaning of the Uniform Deceptive Trade Practices Act ("UDTPA") 815 ILCS 510/1(5).

14

74.     The UDTPA declares that "person[s]" including Defendants, engage in a deceptive trade practice when, in the course of their business, they "represent[] that goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have[.]" 815 ILCS 510/2(a)(5).

75.     It is also a deceptive practice for a person or entity to represent "that goods . . . are of a particular standard[] or quality[,]" to "advertise[] goods . . . with the intent not to sell them as advertised[,]" or to "engage in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(7),(a)(9),(a)(12).

76.     As alleged in the foregoing, Defendants knowingly and/or recklessly misrepresented that the Class Products they manufactured, produced, distributed, marketed, and advertised were safe and fit for their intended purpose or use, when in fact the Class Products are dangerously deceptive and prone to overheating, catching fire, exploding, and injury.

77.     Defendants knowingly and/or recklessly misrepresented and advertised the Class Products as having a "quality" and "characteristics" that they did not have – namely, that they were safe for normal use, that they did not contain dangerous defects, and that they were equipped with a "15-layer SmartProtect system[,]" "TempGuard 2.0[,]" and "multi-layered safety features" capable of detecting overheating and preventing thermal events.

78.     Defendants' misrepresentations through their marketing and advertisement of the Class Products led to the deception and confusion of consumers, including Plaintiff and the State Subclass, regarding the nature and safety of the Class Products.

79.     Defendants' acts, omissions, and practices were likely to, and did in fact, deceive and mislead members of the public, including consumers acting and relying reasonably under the circumstances, to their detriment, like Plaintiff and the members of the State Subclass.

80.    Defendants' intentional and deceitful conduct continues, and they continue to market and sell these Class Products across a number of jurisdictions, putting unknowing consumers at risk for Defendants' joint financial benefit.

81.    Plaintiff, on behalf of himself and the putative State Subclass, requests that the Court enter an order for a Declaratory Judgment declaring that Defendants' manufacture, marketing, and sale of the Class Products as described herein is a deceptive trade practice in violation of the UDTPA, as well as awarding costs and attorneys' fees, and all other relief available under the law.

**COUNT TWO**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505/1 *et seq.*)**

82.    Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

83.    Plaintiff, members of the State Subclass, and Defendants are "persons" within the meaning of 815 ILCS 505/1(c) and 510/1(5).

84.    At all times mentioned herein, Defendants engaged in "trade" or "commerce" in Illinois as defined by 815 ILCS 505/1(f), by engaging in the offering and sale of things of value in Illinois.

85.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") provides that ". . . [u]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in . . . the 'Uniform Deceptive Trade Practices Act'… in the conduct of any trade or commerce are . . . unlawful whether any person has in fact been misled, deceived or

16

damaged thereby." 815 ILCS 505/2. The ICFA further makes unlawful deceptive trade practices undertaken in the course of business. 815 ILCS 505/2.

86.    Plaintiff and members of the State Subclass purchased Class Products manufactured and marketed by Defendants.

87.    Defendants misrepresented the safety of the Class Products through statements, omissions, ambiguities, half-truths, and/or actions and engaged in unfair or deceptive acts or practices prohibited by the ICFA.

88.    As alleged herein, Defendants' marketing, advertising, and business practices were rife with deception.

89.    Specifically, Defendants systematically misrepresented that the Class Products were equipped with "multi-layered safety features to guard against [] overheating," "monitor temperature," and "keep your device — and you — safe."[24]

90.    At all times relevant hereto, Defendants have controlled the marketing of the Class Products.

91.    Defendants concealed the fact that the products they were selling were unsafe.

92.    Defendants continue to conceal the fact that products they have already sold are unsafe.

93.    Defendants undertook the marketing, advertising, labelling, and packaging of the Class Products with the intent that consumers would rely on the representations made therein.

94.    This conduct, and the conduct generally alleged herein, constitutes deceptive practices under the ICFA.

95.    Defendants undertook this unlawful scheme of conduct in a systematic, intentional,

---

[24] https://iniushop.com/pages/iniu-3-industry-first-techs

and reckless manner. The deceptive conduct pervades their product descriptions, marketing, and public statements. Defendants made the deceptive representations, omissions, and/or concealment of material fact discussed above with the intent that Plaintiff and other consumers would rely upon them in determining that their Class Products were safe to use and to possess as well as whether to purchase them or a competing product.

96.    Defendants' improper conduct is misleading and deceptive in a material way in that it induced Plaintiff and the State Subclass to purchase and/or pay a premium for Defendants' Class Products when they otherwise would not have.

97.    Defendants made their untrue and misleading statements and representations willfully, wantonly, and with a reckless disregard for the truth.

98.    Plaintiff and other members of the State Subclass were exposed to, and reasonably relied upon, Defendants' deceptive representations when they purchased Defendants' Class Products, believing they had purchased safe products.

99.    Plaintiff and other members of the State Subclass were harmed in the full amount of the monies paid for the Class Product(s) purchased, as they were not safely or lawfully placed into commerce by Defendants, and were willfully, wantonly, and/or with reckless disregard for the truth, marketed by Defendants as being safe for consumers to possess (they are not), and not unnecessarily dangerous (they are).

100.    Defendants' conduct also amounts to a series of unfair practices.

101.    A plaintiff may recover against a defendant for undertaking an unfair practice where that practice: (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers. *Aliano v. Ferriss*, 2013 IL App (1st) 120242, ¶ 25 (2013).

102.    Defendants' conduct offends the public policy of the state of Illinois, including, at a minimum, the basic public policies aimed at protecting consumers and ensuring that products are offered safely in Illinois.

103.    As such, Defendants' conduct amounts to a pervasive and systemic series of acts done in violation of the safety requirements of the ICFA in order to advance Defendants' own interests and increase Defendants' profits.

104.    As such, Defendants' conduct is wholly unfair to the people of the state of Illinois. The only benefit it provides to any party is the increased profits enjoyed by Defendants as a result of their collective conduct.

105.    Plaintiff and the State Subclass would not have purchased Defendants' Class Products but for Defendants' deceptive and unfair conduct described herein, as Plaintiff and the State Subclass would have purchased a safe alternative instead.

106.    For the reasons discussed herein, Defendants violated and continue to violate the ICFA by engaging in the deceptive and unfair acts or practices prohibited by 815 ILCS 505/2 and 510/2.

107.    Plaintiff and the State Subclass are entitled to damages, including punitive damages, in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties, awards, or relief that may be appropriate under the law.

## COUNT THREE
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (810 ILCS 5/2-314 *et seq.*)

108.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

109.    Defendant Topstar, as the manufacturer of the Class Products, impliedly warranted that the Class Products were of merchantable quality and safe for personal or household use, including that the "15-layer SmartProtect system and TempGuard 2.0" and "multi-layered safety

19

features" were of merchantable quality and effective in deterring overheating and thermal events.

110. Defendant INIU, as the retailer of the Class Products, warranted that the Class Products were of merchantable quality and safe for personal or household use, including that the "15-layer SmartProtect system and TempGuard 2.0" and "multi-layered safety features" were of merchantable quality and effective in deterring overheating and thermal events.

111. It is implied in contract that "goods shall be merchantable . . . if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314.

112. A good is merchantable if it is "fit for the ordinary purposes for which such goods are used." *Id.* 5/2-314(2)(c).

113. The ordinary purpose of a product is largely determined by the expectation of the product use by the manufacturer or seller.

114. Therefore, a product breaches the implied warranty of merchantability under Illinois law when it is not fit for the ordinary purposes for which such goods are used.

115. A component of a product can also breach the implied warranty of merchantability when that component is unsafe or ineffective for that component's ordinary purpose, even if the overall product still functions.

116. The ordinary purpose of Defendants' "SmartProtect" system is "to monitor temperature [within the Class Products] and keep your device — and you — safe."[25]

117. However, at the point of sale, when the warranty was triggered, the Class Products included components—Defendants' "SmartProtect" system and "multi-layered safety features"— that were unfit for their ordinary purpose because they were ineffective. The "SmartProtect" system and "multi-layered safety features" fail to adequately deter overheating and thermal events

---

[25] https://iniushop.com/pages/iniu-3-industry-first-techs

such as explosion and fire hazards.

118.    The Class Products—with their "SmartProtect" system and "multi-layered safety features"—were unfit for their intended purpose of home use and portable charging of personal electronic devices.

119.    Defendants are and were aware that the Class Products are unfit for their intended purpose before Plaintiff ever purchased a Class Product and well before Plaintiff experienced substantial property damage caused by the Class Product.

120.    Defendants breached the implied warranty of merchantability as to the Class Products, with their "SmartProtect" system and "multi-layered safety features" failing to function as intended for their ordinary and specified purpose.

121.    As a direct and proximate result of Defendants' breach of implied warranty of merchantability, Plaintiff and members of the State Subclass have sustained damages in an amount to be determined at trial.

**COUNT FOUR**
**FRAUD BY OMISSION/CONCEALMENT**

122.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

123.    Plaintiff brings this cause of action against Defendants on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the State Subclass.

124.    Defendants made material omissions and misrepresentations concerning a presently existing fact in that Defendants did not fully and truthfully disclose to its customers that the Class Products were dangerous and could not detect or prevent thermal events caused by the failure of internal components, and that the Class Products are capable of and prone to causing injuries, fires and/or explosions, which were not readily discoverable by consumers prior to purchase or through visual inspection. These facts are material because they directly impact the safety and central

21

functionality of the Class Products.

125. Defendants had a duty to disclose these omitted material facts because:

    a. Defendants are in a superior position to know the true state of facts about the limitations of the Class Products;

    b. Plaintiff and the members of the Nationwide Class and State Subclass could not reasonably have been expected to learn or discover that the Class Products were incapable of preventing or detecting thermal events caused by failure of internal components;

    c. Defendants' representations and omissions concerning the capabilities and limitations of the Class Products were material to reasonable consumers, including Plaintiff, in deciding to buy the Class Products because reasonable consumers value information relating to the Class Products' safety; and

    d. Defendants made partial representations but suppressed material facts regarding the Class Products' capabilities.

126. Defendants were in exclusive control of the material facts regarding the Class Products' technical limitations, and such facts were not known to Plaintiff or the members of the Nationwide Class and the State Subclass. Defendants also possessed exclusive knowledge of the Class Products' inability to detect or prevent thermal events caused by failure of internal components and likelihood of causing an injury, fire, and/or explosion.

127. Defendants willfully and knowingly omitted and/or concealed these material facts, in whole or in part, with the intent to induce Plaintiff and members of the Nationwide Class and the State Subclass to purchase the Class Products at a higher price, which did not match the Class Products' true value given their safety limitations, to boost or maintain sales of the Class Products, and to create a false assurance that prolonged loyalty to Defendants' brand—the continued use of the Class Products—would not place consumers in danger.

128. Plaintiff and the members of the Nationwide Class and State Subclass were unaware of these omitted material facts and would not have purchased the Class Products if they

had known of the concealed and/or suppressed facts regarding the Class Products' limitations.

129.    The actions of Plaintiff and the members of the Nationwide Class and State Subclass were justified.

130.    Plaintiff and the members of the Nationwide Class and State Subclass reasonably believed that the Class Products were suitable for safe use—as [mis]represented by Defendants—and thus relied on Defendants' failure to disclose material information about the Class Products' inability to detect or prevent thermal events caused by failure of internal components, and they suffered harm as a result.

131.    Plaintiff and the members of the Nationwide Class and State Subclass would not have purchased the Class Products or would have paid substantially less for them had they known of the safety limitations of the Class Products and that the Class Products do not conform to Defendants' advertising and marketing.

132.    As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff and members of the Nationwide Class and State Subclass suffered actual damages, including the premium price they paid for the Class Products or, alternatively, loss of the benefits of their bargain for their purchases.

133.    Defendants engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively convey that the Class Products were safe. Defendants' actions were intentional to gain a commercial advantage over competitors, and to discourage consumers, like Plaintiff and the members of the Nationwide Class and State Subclass, from purchasing a competitor's product.

134.    Defendants' actions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights and well-being of Plaintiff and the members of

the Nationwide Class and State Subclass in order to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT FIVE**
**FRAUD BY MISREPRESENTATION**

135.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

136.    Plaintiff brings this cause of action against Defendants on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the State Subclass.

137.    Defendants falsely represented to Plaintiff and the Classes that the Class Products contain "multi-layered safety features to guard against [] overheating" and provide "[u]ncompromising safety" against battery overheating, fires, explosions, and thermal events.

138.    Defendants intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the members of the Nationwide Class and State Subclass to purchase the Class Products at premium prices.

139.    Defendants knew or should have known that their representations about the Class Products were false in that they cannot detect or prevent thermal events caused by failure of internal components and that they are capable of and prone to causing fires and explosions. Defendants knowingly allowed their packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the members of the Nationwide Class and State Subclass.

140.    Plaintiff and the members of the Nationwide Class and State Subclass did in fact rely on these misrepresentations and purchased the Class Products to their detriment. Given the deceptive manner in which Defendants advertised, marketed, represented, and otherwise promoted the Class Products, Plaintiff's and members of the Nationwide Class's and State Subclass's

reliance on Defendants' misrepresentations were justifiable.

141.    Plaintiff and the members of the Nationwide Class and State Subclass would not have purchased the Class Products or would have paid substantially less for them had they known of the Class Products' safety limitations and that the Class Products do not conform to the promises and warranties as advertised and marketed by Defendants.

142.    As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff and the members of the Nationwide Class and State Subclass suffered actual damages, including the price premium they paid for the Class Products or, alternatively, loss of the benefits of their bargain for their purchases.

## COUNT SIX
## UNJUST ENRICHMENT

143.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

144.    Plaintiff brings this cause of action against Defendants on behalf of himself and members of the of the Nationwide Class or, in the alternative, the State Subclass.

145.    Plaintiff and the members of the Nationwide Class and State Subclass conferred monetary benefits on Defendants by purchasing the Class Products. Defendants' profits are funded entirely from their generated revenues – payments made by or on behalf of Plaintiff and the members of the Nationwide Class and State Subclass. As such, a portion of these payments was attributable to Defendants' false representations about the Class Products' safety capabilities and omissions regarding their limitations and risks.

146.    Defendants knew that Plaintiff and the members of the Nationwide Class and State Subclass conferred a benefit which Defendants accepted, and through which, Defendants were unjustly enriched in retaining the revenues derived from Plaintiff's and members of the Nationwide Class's and State Subclass's purchases of the Class Products.

147.    Retention of those monies under these circumstances is unjust and inequitable because Defendants failed to disclose that contrary to their representations, the Class Products cannot detect or prevent thermal events caused by failure of internal components, and instead the Class Products posed serious safety risks including fires and explosions, which pose serious potential harm to consumers and property.

148.    Defendants' conduct, representations, and omissions caused injuries to Plaintiff and members of the Nationwide Class and State Subclass because they would not have purchased the Class Products if the true facts about the Class Products' limitations were known.

149.    Defendants enriched themselves by saving the costs they reasonably should have spent on ensuring that the Class Products' system actually provided the "multi-layered safety features to guard against [] overheating" and thermal events as advertised, or alternatively, by charging premium prices for safety features that simply do not perform as represented.

150.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Nationwide Class and State Subclass is unjust and inequitable, Defendants have been unjustly enriched in an amount to be determined at trial.

## COUNT SEVEN
## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

151.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

152.    Plaintiff brings this claim for strict liability pursuant to the Restatement (Second) of Torts § 402A, which Illinois has adopted.

153.    Defendant Topstar is a manufacturer who produced, designed, and assembled the Class Products and placed the Class Products in the stream of commerce.

154.    Defendant INIU is a retailer who sold, marketed, and advertised the Class Products and placed the Class Products in the stream of commerce.

26

155.    At all relevant times herein, the Class Products were in substantially the same condition as when they left each Defendant's control.

156.    At all times relevant herein, the Class Products were not altered in any way since the time they left each Defendant's control.

157.    At the time of sale, Defendants' Class Products were defective and unreasonably dangerous because Defendants failed to: (1) warn of the known high risk of explosion, burn, and fire hazard; and (2) clearly convey the risk of significant property damage and physical injury posed by a consumer's mere possession of the Class Product.

158.    Defendants not only failed to warn consumers about the serious risks posed by the Class Products, but rather reassured consumers that the Class Products are designed to prevent and deter such risks.

159.    Defendants had a duty to warn Plaintiff and the members of the Nationwide Class and State Subclass regarding the defects, that being the risk of harming consumers due to a burn, explosion, and fire hazard, caused by the Class Products.

160.    Defendants engaged in the business of selling, manufacturing, and supplying the Class Products, and placing them into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the Class Products.

161.    The Class Products supplied to Plaintiff and members of the Nationwide Class and State Subclass were defective in design and formulation and unreasonably dangerous when they left the hands of Defendants and reached consumers, including Plaintiff and members of the Nationwide Class and State Subclass, without substantial alteration in the condition in which they were sold.

162.     Defendants were in a superior position to know of the defects, yet as outlined above, chose to do nothing when the defective condition of the Class Products became known to them.

163.     Defendants failed to provide adequate warnings regarding the risks of the Class Products after knowledge of the defects was known only to them.

164.     Despite their knowledge of the defects and obligation to unilaterally strengthen the Class Products' warnings, Defendants instead chose to actively conceal this knowledge from the public.

165.     Plaintiff and the members of the Nationwide Class and State Subclass would not have purchased, chosen, and/or paid for the Class Products if they knew of the defects and the risks of purchasing the Class Products.

166.     The defects in the Class Products proximately caused Plaintiff's and members of the Nationwide Class's and State Subclass's damages.

167.     Plaintiff and the members of the Nationwide Class and State Subclass have suffered damages in an amount to be determined at trial and are further entitled to any incidental, consequential, and other damages and legal and equitable relief, as well as costs and attorneys' fees, available under the law.

**COUNT EIGHT**
**STRICT PRODUCTS LIABILITY – DESIGN DEFECT**

168.     Plaintiff incorporates all previous paragraphs as if fully set forth herein.

169.     Plaintiff brings this claim for strict liability pursuant to the Restatement (Second) of Torts § 402A, which Illinois has adopted. *See Mikolajczyk v. Ford Motor Co*., 231 Ill.2d 516, 555-56 (2008).

170.     Defendant Topstar is a manufacturer who produced, manufactured, designed, and assembled the Class Products with an intent to place the Class Products in the stream of commerce.

28

171.    Defendant INIU is a retailer who sold, marketed, and advertised the Class Products with an intent to place the Class Products in the stream of commerce.

172.    At all times relevant herein, the Class Products were in substantially the same condition as when they left each Defendant's control.

173.    At all times relevant herein, the Class Products were not altered in any way since the time they left each Defendant's control.

174.    At the time of their sale and/or use, the Class Products possessed numerous design defects that rendered them unreasonably dangerous at the time the products left each Defendant's control.

175.    The dangers posed by the Class Products went beyond that which would be contemplated by a reasonable consumer with ordinary knowledge common to the community as to its characteristics. Alternatively, the benefits of the design are outweighed by the design's inherent risk of danger.

176.    Defendants knew or should have known by reasonable care of the defects described in the factual allegations above.

177.    As a direct, substantial, and proximate result of the design defects, users like Plaintiff are at an increased risk of significant physical injuries and property damage by using Defendants' products in the manner prescribed.

178.    As a direct, substantial, and proximate result of the design defects, Plaintiff experienced significant property damage due to using Defendants' defectively designed products in the manner prescribed.

179.    In the alternative, due to all of these factors, the risk presented by the Class Products far exceeds the utility of the Class Products.

180.    Moreover, Defendants are aware of numerous alternative designs or alternative products which are available and do not present the same dangerous risks.

181.    The products at issue share the same common design and manufacturing process, suffer from the same common defects, and these common defects were the cause of Plaintiff's and other members of the Nationwide Class's and State Subclass's losses.

182.    Plaintiff and members of the Nationwide Class and State Subclass seek the full measure of relief as provided under the law, including damages for pecuniary and non-pecuniary losses, attorneys' fees and costs, and any other relief this Court deems just and proper.

## COUNT NINE
## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

183.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

184.    Plaintiff brings this claim for strict liability pursuant to the Restatement (Second) of Torts § 402A, which Illinois has adopted.

185.    The Class Products are defective, unreasonably dangerous, not merchantable, and not reasonably suited for the use intended in that they were manufactured in such a manner that in reasonably foreseeable usage, the user would suffer harm and/or damages.

186.    The Class Products are defective, unreasonably dangerous, not merchantable, and not reasonably suited for the use intended in that they were manufactured in such a manner that they need not even be in active use for them to overheat, explode, and catch fire. Accordingly, an individual's mere possession of and/or proximity to a Class Product places that individual at risk of experiencing a burn, fire, or explosion caused by the Class Product.

187.    Such defects were unreasonably dangerous and proximately caused and/or contributed to damages including, but not limited to, the damages suffered by Plaintiff and thousands of other users.

188.    Defendant Topstar manufactured the Class Products. The defects existed at the time the Class Products left Topstar's control. Such defects proximately caused and/or contributed to the resultant damages to Plaintiff and thousands of other users.

189.    Defendant Topstar is a manufacturer who, in whole or in part, produced, designed, and assembled the Class Products, with an intent to place these products in the stream of commerce.

190.    Defendant INIU had sufficient input into the making of the Class Products to subject it to liability under this count, and sold the Class Products as new products. The defects existed at the time the Class Products left INIU's control. Such defects proximately caused and/or contributed to the resultant damages to Plaintiff and thousands of other users.

191.    Defendant INIU is a retailer who, in whole or in part, sold, marketed, and advertised the Class Products, with an intent to place these products in the stream of commerce.

192.    At all times relevant herein, the Class Products were in substantially the same condition as when they left each Defendant's control.

193.    At all times relevant herein, the Class Products were not altered in any way since the time they left each Defendant's control.

194.    At the time of their sale and/or use, the Class Products possessed numerous latent manufacturing defects that rendered them unreasonably dangerous to an extent beyond which would be contemplated by a consumer with ordinary knowledge common to the community as to its characteristics.

195.    The manufacture of Defendants' Class Products does not have the intended and warranted deterrent features to prevent the Class Products from overheating, exploding, and causing burn and fire hazards.

196.    Due to these manufacturing defects, the Class Products, when sold, were not merchantable and reasonably suited for their intended use.

197.    The defective Class Products were the proximate cause of Plaintiff's damages.

198.    Defendants knew or should have known by exercising reasonable and/or ordinary care of the defects described herein and the attendant risks they pose to consumers and users and concealed the same.

199.    As a direct and proximate result of the aforementioned manufacturing defects, Plaintiff and members of the Nationwide Class and State Subclass have suffered damages including, but not limited to, special, general, pecuniary, and other damages.

**COUNT TEN**
**NEGLIGENT DESIGN DEFECT**

200.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

201.    Plaintiff brings this claim for negligence pursuant to the Restatement (Second) of Torts § 402A, which Illinois has adopted.

202.    Defendant Topstar is a manufacturer who produced, manufactured, designed, and assembled the Class Products and placed the Class Products in the stream of commerce.

203.    As a manufacturer, Topstar had a duty to exercise reasonable care in the design of the Class Products.

204.    Defendant INIU is a retailer who sold, marketed, and advertised the Class Products and placed the Class Products in the stream of commerce.

205.    Defendant INIU had sufficient input into the making of the Class Products to subject it to liability under this count and sold the Class Products as new products. The defects existed at the time the Class Products left INIU's control. Such defects proximately caused and/or contributed to the resultant damages to Plaintiff and thousands of other users.

206.    By defectively designing a product that utilizes a lithium-ion battery, Defendants breached the standard of care required and owed to consumers and users of their products.

207.    Defendants should have known, in the exercise of ordinary care, that the Class Products were unreasonably dangerous.

208.    The safety mechanisms purportedly included by Defendants in the design of the Class Products does not have the intended and warranted deterrent effects of preventing overheating and thermal events.

209.    At the time of manufacture, Defendants knew or should have known the risks posed by the Class Products and the failure of that design to deter overheating and thermal events.

210.    As a direct, substantial, and proximate result of Defendants' breach of their duties, users like Plaintiff have been exposed to an increased risk of burn, explosion, fire hazard, and substantial physical injury and property damage.

211.    As a direct, substantial, and proximate result of the design defects, Plaintiff experienced significant property damage due to using Defendants' negligently designed products in the manner prescribed.

212.    Plaintiff and members of the Nationwide Class and State Subclass seek the full measure of relief as provided under the law, including damages for pecuniary and non-pecuniary losses, attorneys' fees and costs, and any other relief this Court deems just and proper.

**COUNT ELEVEN**
**NEGLIGENT FAILURE TO WARN**

213.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

214.    Plaintiff brings this claim for negligence pursuant to the Restatement (Second) of Torts § 402A, which Illinois has adopted.

215.    Defendant Topstar is a manufacturer who produced, manufactured, designed, and

assembled the Class Products and placed the Class Products in the stream of commerce.

216.    Defendant INIU is a retailer who sold, marketed, and advertised the Class Products and placed the Class Products in the stream of commerce.

217.    At all relevant times herein, the Class Products were in substantially the same condition as when they left each Defendant's control.

218.    At all times relevant herein, the Class Products were not altered in any way since the time they left each Defendant's control.

219.    As manufacturer, Defendant Topstar had a duty to exercise reasonable care to prevent its products from being unreasonably dangerous by providing adequate warnings on these products that are clear, correct, and conspicuous to consumers and users.

220.    As a retailer, Defendant INIU had a duty to exercise reasonable care to prevent its products from being unreasonably dangerous by providing adequate warnings on these products that are clear, correct, and conspicuous to consumers and users.

221.    At the time of sale, the Class Products were defective and unreasonably dangerous because Defendants failed to: (1) warn of the known high risk of explosion, burn, and fire hazard; and (2) clearly convey the risk of significant property damage and physical injury.

222.    Defendants not only failed to warn consumers about the serious risks posed by the Class Products, but reassured consumers that the Class Products are designed to prevent and deter such risks.

223.    Defendants knew or should have known by exercising reasonable care of the foregoing defects described herein and the attendant risks they posed to consumers and users.

224.    Defendants had a duty to warn consumers and users about these risks.

225.    The failure to warn rendered Defendants' Class Products defective and

unreasonably dangerous.

226.    As a direct, substantial, and proximate result of these negligent failures to warn, Plaintiff experienced significant property damage.

227.    At all times relevant, Defendants expressly warranted that the Class Products were safe, of merchantable quality, and adequately fit for foreseeable use.

228.    At all times relevant, Defendants made these warranties through their website(s), product labeling, and product descriptions, including public assurances of safety measures that were intended to create demand for the Class Products and additional products sold by Defendants.

229.    At all times relevant, the Class Products did not conform to Defendants' express warranties because each Class Product contained a design defect rendering it unsafe and not reasonably fit. The "15-layer SmartProtect system and TempGuard 2.0" and "multi-layered safety features" did not work as intended or as advertised, and the Class Products posed and continue to pose a foreseeable risk of harm to consumers such as Plaintiff.

230.    Plaintiff and members of the Nationwide Class and State Subclass seek the full measure of relief as provided under the law, including damages for pecuniary and non-pecuniary losses, attorneys' fees and costs, and any other relief this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Nationwide Class and State Subclass, as alleged herein, respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

a.  For an order certifying the members of the Nationwide Class and State Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the members of the Nationwide Class and State Subclass as well as naming Plaintiff's attorneys as Class Counsel for the Classes;

b.  For an order declaring the Defendants' conduct violates the causes of action or omissions referenced herein;

c.  For an order finding in favor of Plaintiff and the members of the Nationwide Class and State Subclass on all respective counts asserted herein;

d.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pleaded or as the Court may deem proper;

h.  For an order awarding Plaintiff and members of the Nationwide Class and State Subclass their reasonable attorneys' fees and expenses and costs of suit; and

i.  Such other relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all claims so triable.

Dated: February 3, 2026                **STEPHAN ZOURAS LLC**

By:    _s/    Gillian C. Kimmons_____
                Gillian C. Kimmons

*Attorneys for Plaintiff and the Proposed Nationwide Class and State Subclass*

James B. Zouras
jzouras@stephanzouras.com
Ryan F. Stephan
rstephan@stephanzouras.com
Andrew C. Ficzko
aficzko@stephanzouras.com
Gillian C. Kimmons
gkimmons@stephanzouras.com
**STEPHAN ZOURAS, LLC**
222 West Adams Street, Suite 2020
Chicago, Illinois 60606
Phone: 312-233-1550

36